# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUAN ANTONIO QUINTANILLA, | ) | |
| Petitioner | ) | Civil Action No. 10-279E |
| vs. | ) | Magistrate Judge Maureen P. Kelly |
| ARCHIE LONGLEY, Warden FCI-McKean, | ) | |
| Respondent | ) | |

## MEMORANDUM OPINION

Juan Antonio Quintanilla ("Petitioner"), a federal prisoner, was, at the time of the events that gave rise to this case, incarcerated in the Federal Correctional Institution at McKean ("FCI-McKean"), which is physically located within this judicial district. He is still housed there. Petitioner, proceeding pro se, has filed a Petition for Writ of Habeas Corpus Under Title 28 U.S.C. § 2241 (the "Petition") by which he seeks to challenge the sanctions imposed by the Disciplinary Hearing Officer ("DHO") as the result of Petitioner fighting with another prisoner. ECF No. 4. Those sanctions included the loss of 27 days of Good Conduct Time ("GCT") credits. The DHO found that Petitioner had engaged in fighting in violation of the United States Bureau of Prisons ("BOP") disciplinary rules. Because some evidence supports the fact that Petitioner engaged in fighting, Petitioner's substantive due process challenge must fail. Because there is no evidence of invidious discrimination, Petitioner's Equal Protection claim must fail as well.

## I. FACTUAL AND PROCEDURAL HISTORY

The facts are taken primarily from the Response to Petition for Writ of Habeas Corpus. ECF No. 11.

On October 19, 2009, Petitioner was sentenced by the United States District Court for the Central District of California to a 90 month term of imprisonment followed by a three year term of supervised release for Conspiracy to Interfere with Commerce by Robbery, in violation of 18 U.S.C. § 1951, and Possession of a Firearm In Furtherance of a Drug Trafficking Crime and a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A). ECF No. 11 at 2.

On June 7, 2010, while Petitioner was housed in FCI-McKean, Incident Report No. 2025558 was issued, charging Petitioner with Fighting in violation of Code 201. ECF No. 11-2 at 5 to 6. The Incident Report alleged the following:

> At approximately 9:30 p.m., I was filling out log books in my office when I heard yelling outside my office door. I looked out and saw inmate Quintanilla, Juan, #55904-112, striking inmate [name and Register Number omitted], with a closed fist in the face and body. I ordered Quintanilla to stop and he complied.

ECF No. 11-2 at 5.

The Incident Report was delivered to Petitioner on June 8, 2010, at approximately 10:00 a.m. ECF No. 11-2 at 5. Upon delivery of the Incident Report, Petitioner was advised of his right to remain silent during the disciplinary process. When asked if he wanted to make a statement, Petitioner indicated that the other inmate started fighting with him and a third inmate over four books of stamps. Petitioner indicated that the other inmate started the fight and hit Petitioner and the third inmate. Petitioner made no reference to videotape evidence. He did not request any staff or inmate witnesses. ECF No. 11-2 at 6. At the conclusion of the investigation,

the Incident Report was referred to the Unit Discipline Committee ("UDC") for an initial hearing. ECF No. 11-2 at 6.

On June 9, 2010, the UDC convened for an Initial Hearing for Incident Report No. 2025558. ECF No. 11-2 at 5. When asked if he wished to make a statement, Petitioner stated, "I was not fighting. I have no problem. Watch the video." At the conclusion of the hearing the UDC referred the Incident Report to the DHO for final disposition. The UDC recommended that Petitioner lose GCT and be subjected to disciplinary segregation if he were found guilty. ECF No. 11-2 at 5. Petitioner was advised of his rights at the Discipline Hearing. ECF No. 11-2 at 8. Petitioner waived his right to a staff representative and he requested no witnesses. ECF No. 11-2 at 10.

The DHO hearing was conducted on June 18, 2010. ECF No. 11-2 at 12 to 14. Petitioner confirmed that he waived his right to witnesses and the services of a staff representative. ECF No. 11-2 at 12 to 13. He told the DHO that the other inmate owed him four books of stamps. When Petitioner asked for the stamps, the other inmate hit him. Petitioner stated that he never fought back. ECF No. 11-2 at 12. According to the Respondents, at no point during the DHO hearing did Petitioner refer to videotape evidence. ECF No. 11 at 4. However, Petitioner contends that he did request the DHO to watch the video surveillance. ECF No. 14 at 6. ("Petitioner also requests to the DHO while in the hearing to 'Please Watch The Video, Before You Proceed With The Hearing; but the DHO simply said: IT IS NOT NECESSARY.'") (sic *passim*) (emphasis deleted). We do not herein resolve this conflict but will accept, for the sake of discussion, the Petitioner's version as true, i.e., that he did request the DHO to view the surveillance tape but that the DHO refused to do so.

3

At the conclusion of the hearing, the DHO determined that Petitioner committed the prohibited act as charged. The DHO's decision was based upon the written statement of the reporting staff member. According to the written statement, the reporting staff member was in his office on June 7, 2010, at about 9:30 p.m. when he heard yelling outside his office door. He looked out and saw Petitioner striking the other inmate with a closed fist in the face and body. The reporting staff member ordered Petitioner to stop and Petitioner complied with the order. ECF No. 11-2 at 13. The DHO noted Petitioner's statement that the other inmate struck him, and that Petitioner allegedly never fought back. It was also noted that Petitioner denied fighting.

The DHO gave little weight to Petitioner's defense. It was noted that Petitioner presented no documentary evidence or witness testimony to support his defense. The DHO explained that he gave greater weight to the eyewitness account of the reporting staff member indicating that he observed Petitioner striking the other inmate in the face and body with his fist. Absent from the record was any evidence that the reporting staff member, the investigating Lieutenant, or any member of the UDC were prejudiced against Hispanic inmates or Petitioner in particular, or were otherwise not impartial. At no point during the hearing did Petitioner impugn the impartiality of the DHO. ECF No. 11-2 at 12 to 14.

The DHO imposed the following sanctions: (1) 15 days disciplinary segregation and (2) the disallowance of 27 days of GCT. ECF No. 11-2 at 13. The DHO explained that by fighting, Petitioner revealed his willingness to break the rules for his own personal satisfaction. It was explained that misbehavior of this nature impaired the ability of staff to maintain a safe and secure facility. The DHO advised that a hostile, physical or verbal engagement between two inmates could result in an inmate becoming seriously injured. It was observed that if either

4

Petitioner or the other inmate had been seriously injured, FCI-McKean would be faced with an unnecessary financial burden. It was explained that the sanctions were imposed to punish Petitioner for his misconduct and to place a significant impact on Petitioner's future behavior. The DHO report was delivered to Petitioner on or about June 18, 2010. ECF No. 11-2 at 14.

After exhausting his administrative appeals, Petitioner filed the Petition. ECF No. 4. The Respondents filed their Response. ECF No. 11. Petitioner filed a Traverse. ECF No. 12. All the parties have consented to have the Magistrate Judge exercise plenary jurisdiction. ECF Nos. 6, 8. The case was subsequently transferred to the undersigned. ECF No. 13.

## II. DISCUSSION

Petitioner claims that his due process rights were violated. He bases his claim on two contentions. First, he claims that all of the people involved in the disciplinary hearing process were biased against him as a Hispanic man and they were "involved in a conspiracy to provide more punishment to the Petitioner," ECF No. 4 at 2, and that those involved in the disciplinary process were biased in favor of African-Americans allegedly because "they wanted to please the warden who is an African American." Id. Petitioner also contended that the African-American inmate, whom he was fighting with, was not sanctioned. ECF No. 14 at 5 to 6. Secondly, Petitioner claims that his due process rights were violated because the DHO failed to review video surveillance of the incident.

Petitioner requests that this Court review "all the evidence," ECF No. 14 at 6, including the surveillance video. ECF No. 14 at 6. Petitioner seeks the restoration of Petitioner's 27 days of GCT as a remedy. He also seeks to restore 5 points to Petitioner, apparently a reference to his security grading. ECF No. 14 at 7.

5

### A. Petitioner's Due Process Claims Do Not Merit Relief.

We understand Petitioner's arguments to be that his substantive due process rights were violated, i.e., it was fundamentally unfair that he was discriminated against, and that the DHO did not view possibly exculpatory evidence in the form of the video surveillance.[1]

Addressing the issue of substantive due process, the United States Supreme Court in Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445 (1985) proclaimed:

> [w]e hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S., at 106, 47 S.Ct., at 304. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. *See ibid.* . . . We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. *See Wolff*, 418 U.S., at 562-563, 567-569, 94 S.Ct., at 2977-2978, 2980-2981. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, *id.*, at 556, 94 S.Ct., at 2974, and neither the amount of evidence necessary to support such a conviction, *see Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), nor any other standard greater than some evidence applies in this context.

---

[1] To the extent that Petitioner is making a procedural due process claim we find that all of the procedural due process protections required by Wolff v. McDonnell, 418 U.S. 539 (1974) were met. Piggie v. Cotton, 342 F.3d 660, 662 (7th Cir. 2003)("In the prison disciplinary context, due process requires only that the prisoner receive advance written notice of the charges, *see Wolff*, 418 U.S. at 564, 94 S.Ct. 2963, an opportunity to present testimony and documentary evidence to an impartial decision-maker, *id.* at 566, 570-71, 94 S.Ct. 2963, and a written explanation for the discipline, *id.* at 564, 94 S.Ct. 2963"); McCoy v. Lockhart, 5 F.3d 532 (Table), 1993 WL 361869, at *2 (8th Cir. 1993) ("In the prison disciplinary context, due process requires only that the inmate be afforded the procedures set forth in Wolff, 418 U.S. at 563-72"). We address the issue of the alleged racial animus against Petitioner below.

Hill, 472 U.S. at 455-56. This "some evidence" standard of review is very narrow.[2] We can only overturn the DHO's finding if no reasonable adjudicator could have found Petitioner guilty. Henderson v. U.S. Parole Com'n, 13 F.3d 1073, 1077 (7th Cir. 1994)("We will overturn the DHO's decision only if no reasonable adjudicator could have found Henderson guilty of the offense on the basis of the evidence.").

Here, the DHO relied upon the evidence of an eyewitness corrections officer. The eyewitness said he heard yelling outside his office door, looked out and saw Petitioner strike the other inmate. The DHO relied upon this statement in finding Petitioner guilty of the offense. The DHO did so notwithstanding Petitioner's alleged request to have the DHO view the surveillance video. We find that the eyewitness statement of the reporting staff member as recounted in the Incident Report satisfies the "some evidence" standard of Hill. Thus, Petitioner has not carried his burden to show entitlement to relief under Section 2241. Riggs v. Federal Bureau of Prisons, Civ.A. No. 5:06-cv-00687, 2007 WL 1655240, at *3 (S.D.W.Va., June 6, 2007) ("The petitioner carries the burden of proving he is entitled to habeas corpus relief under 28 U.S.C. § 2241."), *appeal dismissed by*, Riggs v. Felts, 257 F. App'x 636 (4th Cir. 2007).

As to Petitioner's contention that the DHO refused to review the surveillance tape, such a decision by the DHO as to one purported piece of evidence does not discard the eyewitness statement as the "some" evidence that the DHO relied on. As the United States Supreme Court

---

[2] U.S. v. Kizeart, 505 F.3d 672, 675 (7th Cir. 2007)("Perhaps, however, we can borrow for the present class of cases the narrowest judicial review of judgments we know, and that is judicial review of the sanctions imposed by prison disciplinary boards. *Superintendent v. Hill*, 472 U.S. 445, 455-57, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (the prison disciplinary board's ruling must be supported by a "modicum" of evidence, 'some' evidence, 'any' evidence, or even just 'meager' evidence)[.]").

made clear in Hill, the role of a United States District Court in reviewing a disciplinary proceeding in a habeas petition is a limited one and one where the District Court is not required to conduct an "examination of the entire record, [nor engage in an] independent assessment of the credibility of witnesses, [n]or weigh[] the evidence." Hill, 472 U.S. at 455. Instead, the relevant question before the District Court "is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id., at 455-56. Here, there is evidence that supports the DHO's finding.

This Court finds the decision of the United States Court of Appeals for the Third Circuit in Howard v. Werlinger, 403 F. App'x 776 (3d Cir. 2010) to be instructive. In Howard, a federal prisoner was charged with a misconduct of engaging in sexual contact with a female visitor. The federal prisoner was found guilty and sanctioned to a loss of good conduct time. The federal prisoner filed a Section 2241 habeas petition, arguing that the "BOP denied him due process when the hearing officer refused to view video footage of the incident and instead relied on two officers' review of the footage." Id., 403 F. App'x at 777. The United States Court of Appeals for the Third Circuit, rejected the argument and held that "the officers' reports of Howard's actions constitute some evidence supporting the hearing officer's finding of guilt." Id. We find the holding of Howard persuasive and adopt it herein. Accord Arceneaux v. Pearson, 449 F. App'x 396, 398 (5th Cir. 2011) ("Arceneaux claims that the DHO's failure to watch a surveillance tape of the footage was a violation of his due process right to present documentary evidence. The right to present documentary evidence is not an absolute requirement of due process in prison disciplinary hearings, it is one of a set of flexible factors that the Supreme Court has identified as characteristic of fair hearings. . . . The fact that the DHO did not watch

surveillance footage, assuming such footage existed, did not in itself render the hearing unfair."). Hence, we reject Petitioner's argument that his substantive due process rights were violated, i.e., his disciplinary hearing was rendered fundamentally unfair, when the DHO allegedly refused to review the surveillance tape.

Petitioner attempts to distinguish Howard on the ground that therein, the federal prisoner sought himself to review the tape but was denied, whereas here, Petitioner claims he never sought to review the tape himself but only wanted the DHO to review the tape in camera and this Court to review the tape in camera. ECF No. 12 at 9 to 11. We are not persuaded as Petitioner is mistaken in suggesting that the federal prisoner in Howard did not argue that his due process rights were violated merely by the failure of the DHO to review the tape. As the above quote from Howard makes clear, the federal prisoner therein did make the argument that the DHO violated his due process rights by failing to review the surveillance tape, which is the exact same argument Petitioner makes herein, and which was rejected by the Third Circuit in Howard.[3]

Petitioner's arguments essentially invite us to do what Hill prohibits us from doing, i.e., to go beyond our narrow scope of review to determine if there is "some evidence" supporting the DHO's determination and to go further and to ask whether the DHO failed to consider other evidence or failed to adequately consider allegedly exculpatory evidence. We are not persuaded. See McKeithan v. Beard, 322 F. App'x 194, 201 (3d Cir. 2009) ("the videotape and photographs

---

[3] It is true that the federal prisoner in Howard made the additional argument that he was entitled to review the surveillance tape but that was in addition to the argument made that the DHO was required to review the tape as a matter of due process. See Howard, 403 F. App'x at 777 ("Howard **also** argues that he should have been allowed to view the video footage of the incident. The BOP does not allow inmates to view surveillance video for security reasons. As noted above, due process does not require that an inmate be allowed to confront the evidence against him. Thus, Howard was not entitled to view the video footage of the incident.") (emphasis added).

at most constitute potentially exculpatory evidence, which prison officials have **no constitutional obligation to** preserve **or consider**.") (emphasis added). Accordingly, Petitioner has not carried his burden to show entitlement to relief for this claimed violation of his due process rights.

### B. Petitioner's Racial Animus Claims Do Not Merit Relief.

Next we take up Petitioner's claim of alleged racial animus against him. We understand him to either be making an argument that his rights under the Equal Protection component of the Fifth Amendment's due process clause were violated or that his substantive due process rights were violated by the unequal treatment. See, e.g., Log Cabin Republicans v. U.S., 658 F.3d 1162, 1172 (9th Cir. 2011) ("'substantive due process and equal protection doctrine are intertwined for purposes of equal protection analyses of federal action' because the Fifth Amendment's equal protection guarantee is grounded in its due process clause") (quoting Philips v. Perry, 106 F.3d 1420, 1427 (9th Cir. 1997)). We are not persuaded that there was any racial animus. First, the only "fact" Petitioner points to in support of his claim is Petitioner's assertion that the African American who was involved in the fight was not disciplined. However, this is simply not accurate. As the Respondent points out: "A review of the disciplinary record reveals that the African American inmate in question was also subjected to disciplinary action for the June 7, 2010 fight at FCI-McKean. The other inmate was sanctioned to disallowance of 27 days GCT, forfeiture of 15 days GCT, and 30 days disciplinary segregation, which is more severe than the sanctions imposed upon Petitioner." ECF No. 11 at 9.

The only other "support" for Petitioner's contention that the individuals involved in the disciplinary process were biased is that the staff at FCI-McKean wanted to please the

African-American warden thereby showing favoritism toward African-American prisoners. However, given that the other inmate involved in the incident, who was African-American, was sanctioned more harshly than Petitioner, Petitioner's contentions simply are not borne out by the record.  Nor, does his contention explain why his appeals to the regional office and/or central office were denied.  Petitioner fails to explain what racial animus these bodies have or what incentive they had to please the African-American warden of FCI-McKean.  Petitioner has simply failed to carry his burden to persuade this Court that there was any racial animus involved in charging Petitioner with fighting and in finding him guilty thereof and in sanctioning him with the sanctions he received.

As none of Petitioner's issues merits relief, the Petition is denied.[4]

BY THE COURT,

/s/Maureen P. Kelly
MAUREEN P. KELLY
U.S. MAGISTRATE JUDGE

Date: July 23, 2012

cc: Juan Antonio Quintanilla
55904-112
McKean Federal Correctional Institution
Inmate/Mail/Parcels
P.O. Box 8000
Bradford, PA 16701

All Counsel of Record via CM-ECF

---

[4] Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement.  United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000), *abrogated on other grounds by*, Gonzalez v. Thaler, __ U.S. __, 132 S.Ct. 641 (2012); 28 U.S.C. § 2253(c)(1)(B).  Hence, no determination is made in this respect.